In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-1439

JESUS ARREOLA-CASTILLO,

*Petitioner-Appellant*,

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 14-cv-2118 — **Larry J. McKinney**, *Judge*.

ARGUED APRIL 10, 2018 — DECIDED MAY 3, 2018

Before WOOD, *Chief Judge*, and FLAUM and KANNE, *Circuit Judges*.

FLAUM, *Circuit Judge*. Petitioner Jesus Arreola-Castillo was convicted of a federal drug crime. Because he had at least two prior felony drug convictions in New Mexico, he was subject to the recidivism provisions of 21 U.S.C. § 841. Pursuant to that statute, he received a mandatory minimum sentence of life in prison. He subsequently challenged the underlying felony drug convictions in New Mexico state court, which the

state court ultimately vacated. Now, he moves to reopen his federal sentence under 28 U.S.C. § 2255, arguing that he is no longer subject to the recidivism enhancement because the prior state convictions have been vacated. The district court denied his § 2255 petition on the ground that it was time-barred. It relied on 21 U.S.C. § 851(e), which prohibits an individual from challenging the validity of a prior conviction that is more than five years old at the time the government seeks the recidivism enhancement. Because Arreola-Castillo is not challenging the validity of his prior convictions, but rather their very existence, we reverse.

## I. Background

In 2006, a jury found Arreola-Castillo guilty of conspiracy to distribute 1,000 kilograms or more of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846. The government filed two informations under 21 U.S.C. § 851 alleging that Arreola-Castillo had previously been convicted of two felony drug offenses in New Mexico in 1996. Because he had two or more prior felony drug convictions, the district court was required to impose a mandatory life sentence under the recidivism provisions of 21 U.S.C. § 841(b)(1)(A). Had it not been for the mandatory life sentence, Arreola-Castillo's Guidelines sentencing range would have been 188–235 months in prison. We affirmed Arreola-Castillo's sentence on direct appeal in 2008. *See United States v. Arreola-Castillo*, 539 F.3d 700 (7th Cir. 2008).

Arreola-Castillo subsequently challenged both underlying state convictions in New Mexico state courts. He moved to withdraw the guilty pleas in those convictions on the ground that he received ineffective assistance of counsel. Specifically, Arreola-Castillo claimed that his attorney did not inquire into

his immigration status or sufficiently advise him of the immigration consequences of pleading guilty. The New Mexico state courts agreed and accordingly vacated the convictions on November 19, 2014 and June 29, 2015.

In December 2014, after his first conviction was vacated, Arreola-Castillo moved to reopen his federal sentence under § 2255. The government initially moved to dismiss the petition as an unauthorized second or successive petition under 28 U.S.C. §§ 2244 and 2255(h). The court denied that motion, ruling that Arreola-Castillo's petition was based on a claim that did not become ripe until his state convictions were vacated.

Next, the government argued that Arreola-Castillo's claim was "meritless" in light of 21 U.S.C. § 851(e). That provision bars an individual from "challeng[ing] the validity of any prior conviction alleged under this section which occurred more than five years before the date of the information alleging such prior conviction." 21 U.S.C. § 851(e). The government argued that § 851(e) precludes Arreola-Castillo's claim because the informations alleging the prior convictions were filed in 2006—more than five years after his (now vacated) convictions occurred in 1996. In response, Arreola-Castillo argued that § 851(e), which assumes the existence of a prior conviction and addresses its validity, does not apply because his convictions have been vacated.

In January 2017, the district court held that § 851(e) bars Arreola-Castillo's claims, and accordingly denied his petition for relief under § 2255. We subsequently granted Arreola-Castillo's request for a certificate of appealability. Although the parties had not addressed the issue below, we instructed them

to brief the timeliness of Arreola-Castillo's claim under § 2255(f)(4).

## II. Discussion

"On an appeal from the denial of a § 2255 motion, we review the district court's legal conclusions de novo and its factual findings for clear error." *Keller v. United States*, 657 F.3d 675, 679 (7th Cir. 2011). "A § 2255 motion must be granted when a defendant's 'sentence was imposed in violation of the Constitution or laws of the United States.'" *Fountain v. United States*, 211 F.3d 429, 433 (7th Cir. 2000) (quoting 28 U.S.C. § 2255)).

### A. We Decline to Address the Government's Forfeited Timeliness Argument Under § 2255(f)(4)

There is a one-year statute of limitations for filing habeas petitions. 28 U.S.C. § 2255(f). In relevant part, the limitation period runs from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." *Id.* § 2255(f)(4). In *Johnson v. United States*, the Supreme Court held that vacatur of a prior state conviction used to enhance a federal sentence is a "matter of fact" that could trigger this one-year limitation period. 544 U.S. 295, 302 (2005). "[T]he period begins when a petitioner receives notice of the order vacating the prior conviction, provided that he has sought it with due diligence in state court, after entry of judgment in the federal case with the enhanced sentence." *Id.* at 298.

On appeal, the government argues for the first time that Arreola-Castillo's petition is untimely under § 2255(f)(4) be-

cause he did not diligently pursue vacatur of his state convictions.[1] Despite two years of litigation below, the government never made this timeliness argument in the district court. Instead, it moved to dismiss Arreola-Castillo's petition on the ground that it was an unauthorized successive motion under §§ 2244 and 2255(h). When that failed, the government argued that § 851(e) barred Arreola-Castillo's challenge.

We are not required to address the government's belated timeliness argument. The statute of limitations in § 2255(f)(4) is not a jurisdictional requirement, but rather an affirmative defense. *Estremera v. United States*, 724 F.3d 773, 775 (7th Cir. 2013). As a general rule, a defendant must raise a statute of limitations defense in their answer. *Day v. McDonough*, 547 U.S. 198, 207–08 (2006) (citing Fed. R. Civ. P. 8(c), 12(b), 15(a)). Failure to do so results in forfeiture. *Id.* Accordingly, "courts are under no *obligation* to raise the time bar *sua sponte*." *Id.* at 205.

Nevertheless, we have discretion to examine the timeliness of a habeas petition "when extraordinary circumstances so warrant." *Wood v. Milyard*, 566 U.S. 463, 471, 473 (2012) (citing *Day*, 547 U.S. at 201). "[L]eeway" is appropriate in this context because the statute of limitations "implicat[es] values beyond the concerns of the parties." *Id.* at 472 (second alteration in original) (quoting *Day*, 547 U.S. at 205). It "promotes judicial efficiency and conservation of judicial resources, safeguards the accuracy of state court judgments by requiring resolution of constitutional questions while the record is fresh,

---

[1] The government does not dispute that Arreola-Castillo filed his § 2255 petition within one year of receiving notice of the orders vacating his state convictions.

and lends finality to state court judgments within a reasonable time." *Id.* (quoting *Day*, 547 U.S. at 205–06). Although *Day* and *Wood* involved state prisoners' habeas petitions under 28 U.S.C. § 2244, we have assumed that those cases apply equally to federal prisoners' habeas petitions under § 2255. *See, e.g.,* *Ryan v. United States*, 688 F.3d 845, 848 (7th Cir. 2012).

This discretion is limited in several important respects. First and foremost, "a federal court does not have *carte blanche* to depart from the principle of party presentation basic to our adversary system." *Wood*, 566 U.S. at 472. Thus, although we may consider a timeliness argument that was inadvertently forfeited, "[i]t would be 'an abuse of discretion … to override a State's deliberate waiver of a limitations defense.'" *Id.* at 472–73 (quoting *Day*, 547 U.S. at 202). In other words, "a court of appeals is entitled to deny collateral relief on a procedural ground that the prosecutor has forfeited by overlooking it, but not on a ground that the prosecutor has waived." *Ryan*, 688 F.3d at 848.

Second, even if the government accidentally forfeits a timeliness argument, our "power to decide an appeal on a forfeited ground should be used only in exceptional cases." *Id.* We have "good reason" to "abstain from entertaining issues that have not been raised and preserved in the court of first instance." *Wood*, 566 U.S. at 473. "That restraint is all the more appropriate when the appellate court itself spots an issue the parties did not air below." *Id.* In addition, we must give "[d]ue regard for the trial court's processes and time investment." *Id.* After all, "[i]t typically takes a district court more time to decide a habeas case on the merits, than it does to resolve a petition on threshold procedural grounds." *Id.* When a court of appeals belatedly interjects a procedural impediment after

resolution on the merits, "the district court's labor is discounted." *Id.* at 474. Perhaps even more troubling, "the appellate court acts not as a court of review but as one of first view." *Id.*

Here, the government argues that its failure to pursue a timeliness argument under § 2255(f)(4) was an unintentional "misstep." Accordingly, it contends that it merely forfeited the argument. Arreola-Castillo, on the other hand, argues for waiver. In the event we find forfeiture, Arreola-Castillo argues that we should not exercise our discretion to address the timeliness issue.

Ultimately, we need not decide the issue. Even if the government merely forfeited the timeliness argument, we would not exercise our discretion to address it *sua sponte*. The government does not cite a single case in which we have exercised our discretion to address a forfeited timeliness argument in a habeas case on appeal. We have, however, declined to exercise that discretion on at least two occasions. *See Turner v. United States*, 693 F.3d 756, 758–59 (7th Cir. 2012); *Hill v. Werlinger*, 695 F.3d 644, 647 (7th Cir. 2012). As in those cases, the government "has presented nothing to show that this is an 'exceptional case' in which we should base our decision on a forfeited ground." *Hill*, 695 F.3d at 647 (quoting *Wood*, 566 U.S. at 473). The government argues that the record already contains the relevant facts. But that hardly renders this case exceptional. Furthermore, Arreola-Castillo might have submitted additional evidence of his diligence had the government raised the timeliness objection in the district court. We decline to penalize him now for substantiating his claims despite the government's oversight. The government also claims that we should

exercise our discretion to "avoid a potentially difficult statutory construction question with a lurking circuit split behind it." However, as explained *infra*, the only published federal court of appeals decision on this issue favors Arreola-Castillo's interpretation. And even if we took the other circuit's nonprecedential order into account, we would at most be lining up on one side of a debate. In this context, we see no reason to avoid such a step.

In sum, we have good reason to exercise our normal restraint in this context. The district court presided over this case for two years and ultimately resolved it on the merits. Were we to dismiss the case on a procedural ground at this juncture, we would effectively discount the district court's efforts. Therefore, we exercise our discretion to proceed to the merits of Arreola-Castillo's habeas petition.

### B.  Section 851(e) Does Not Apply to a § 2255 Petition to Reopen a Federal Sentence Based on the Vacatur of Enhancing State Convictions

Turning to the merits, Arreola-Castillo argues that the district court erred by holding that § 851(e) bars an individual from reopening his federal sentence under § 2255 when the state convictions that enhanced the sentence have since been vacated. We review that question of statutory interpretation de novo. *United States v. Ford*, 798 F.3d 655, 661 (7th Cir. 2015).

#### 1.  Statutory Framework

Section 841(b) outlines the penalties for federal drug crimes based upon the quantity of drugs involved and the number of prior drug convictions. *See* 21 U.S.C. § 841(b). When a drug offense involves 1,000 kilograms or more of marijuana, the statutory sentencing range is ten years to life in

prison. *Id.* § 841(b)(1)(A). If the defendant has two or more prior convictions for a felony drug offense, the penalty becomes a mandatory life sentence. *Id.*

To impose a recidivism penalty under § 841, the government must follow the procedures in 21 U.S.C. § 851. Under that section, the United States attorney must file an information with the sentencing court stating the previous convictions to be relied upon. *Id.* § 851(a). If an information is filed, "the court shall … inquire of the person with respect to whom the information was filed whether he affirms or denies that he has been previously convicted as alleged in the information." *Id.* § 851(b). "If the person denies any allegation of the information of prior conviction, or claims that any conviction alleged is invalid, he shall file a written response … ." *Id.* § 851(c)(1). "Any challenge to a prior conviction, not raised by response to the information before an increased sentence is imposed in reliance thereon, shall be waived unless good cause be shown for failure to make a timely challenge." *Id.* § 851(c)(2).

If the person files a response, "[t]he court shall hold a hearing to determine any issues raised by the response which would except the person from increased punishment." *Id.* § 851(c)(1). At the hearing, the parties may present evidence and request that the court make findings of fact and conclusions of law. *Id.* "If the court determines that the person has not been convicted as alleged in the information, that a conviction alleged in the information is invalid, or that the person is otherwise not subject to an increased sentence as a matter of law," the United States attorney may appeal that determination. *Id.* § 851(d).

Section 851 also includes the following statute of limitations: "No person who stands convicted of an offense under this part may challenge the validity of any prior conviction alleged under this section which occurred more than five years before the date of the information alleging such prior conviction." *Id.* § 851(e).

> 2. *The Statutory Text Distinguishes Between Challenging the Validity of a Prior Conviction and Disputing the Fact of a Prior Conviction*

The parties dispute whether the five-year statute of limitations in § 851(e) applies to Arreola-Castillo's § 2255 petition. The answer to this question turns on whether Arreola-Castillo's habeas petition "challenge[s] the validity of any prior conviction." *Id.* If so, it is clearly barred by § 851(e) because the government filed the information alleging his prior convictions in 2006—more than five years after the prior convictions occurred in 1996. However, Arreola-Castillo argues that because the state court already vacated his prior convictions, he is no longer challenging the validity of those convictions, but rather their very existence. Accordingly, he claims that § 851(e) does not apply.

To resolve this dispute, we must "begin[] with the plain language of the statute." *United States v. Berkos*, 543 F.3d 392, 396 (7th Cir. 2008). Here, the statutory language supports Arreola-Castillo's interpretation. Section 851 repeatedly distinguishes between denying the *fact* of a prior conviction, on the one hand, and challenging the *validity* of a prior conviction, on the other. For example, under § 851(c)(1), a person may respond to an information by either "den[ying] any allegation of the information of prior conviction, or claim[ing] that any conviction alleged is invalid." 21 U.S.C. § 851(c)(1). Likewise,

under § 851(d)(2), the sentencing court may "determine[] that the person has not been convicted as alleged in the information, that a conviction alleged in the information is invalid, or that the person is otherwise not subject to an increased sentence as a matter of law." *Id.* § 851(d)(2). The statute's persistent use of the disjunctive "or" when describing these concepts suggests that denying the fact of a prior conviction and challenging the validity of a prior conviction must be given separate meanings. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) ("Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings … ."). Critically, although § 851(e) bars an individual from challenging "the validity of any prior conviction" that is more than five years old, it in no way limits an individual's ability to deny that such a conviction exists. 21 U.S.C. § 851(e).

In addition, § 851's use of the word "challenge" is instructive. "The word 'challenge' is used only three other times in § 851, once in § 851(b) and twice in § 851(c)(2)." *United States v. McChristian*, 47 F.3d 1499, 1503 (9th Cir. 1995). In § 851(b), it is "ambiguous" whether the word "challenge" would include a showing that the prior conviction has been vacated in state court. *Id.*[2] However, the use of "challenge" in § 851(c)(2) provides more insight into what the drafters intended that word to mean. *See id.* Section 851(c)(2) outlines the steps a defendant must take if he "claim[s] that a conviction alleged in the information was obtained in violation of the Constitution of the

---

[2] To the extent one could argue that § 851(b) uses the term "challenge" more broadly than § 851(c), at most that would suggest that there is some ambiguity in the statute. The context and purpose of the law taken as a whole, however, suggest that the word "challenge" normally means a "full-blown attack," for the reasons we have explained.

United States." 21 U.S.C. § 851(c)(2). In that scenario, the defendant must "set forth his claim, and the factual basis therefor, with particularity in his response to the information." *Id.* The provision also establishes the burden of proof (preponderance of the evidence) with respect to any factual issues raised in the response. *Id.* In the very next sentence, § 851(c)(2) refers to this situation as a "challenge to a prior conviction." *Id.* The reference to pleading requirements and the burden of proof suggests that the word "challenge," as used in § 851(c)(2), "means only a full-blown, collateral attack in federal court on the prior conviction." *McChristian*, 47 F.3d at 1503. It follows that "challenge" means the same in § 851(e). *See United States v. LaFaive*, 618 F.3d 613, 617 (7th Cir. 2010) ("Absent evidence of Congress's intent to the contrary, we assume that Congress intended the same words used close together in a statute to have the same meaning."). Where, as here, a state court has vacated the prior convictions, the petitioner is not launching a full-blown collateral attack in the federal court. Rather, he has already successfully challenged the validity of those convictions in state court and is simply asking the federal court to recognize the state court's determination.

Looking at § 851(e) in isolation, the government argues that denying the existence of a vacated conviction necessarily entails challenging the validity of that conviction. To support this argument, the government points to various dictionary definitions of the term "validity." However, this argument fails for two reasons.

First, some of the proffered definitions of "validity"—e.g., "the quality or state of being valid"—are unhelpful tautolo-

gies. *Validity*, Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/validity (last visited May 2, 2018). Other definitions—e.g., "the quality of being well-grounded, sound, or correct" and "meritorious"—actually support Arreola-Castillo's position. *Id..*; *Valid*, Black's Law Dictionary (10th ed. 2014). If valid means meritorious, then a vacated "conviction ha[s] no 'validity' that could be challenged," and "any challenge in federal court to the validity of that conviction would have been moot." *McChristian*, 47 F.3d at 1503.

Second, by offering definitions of validity that are completely untethered from how that word is used elsewhere in the statute, the government violates "the cardinal rule that a statute is to be read as a whole." *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991). "[S]tatutes 'should not be read as a series of unrelated and isolated provisions.'" *Gonzales v. Oregon*, 546 U.S. 243, 273 (2006) (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 570 (1995)). "[T]he meaning of statutory language, plain or not, depends on context." *King*, 502 U.S. at 221. As explained *supra*, § 851 repeatedly refers to the validity of a conviction and the fact of a conviction as separate and mutually exclusive concepts. To the extent there is a conflict between the use of the word "validity" in the statute and generic dictionary definitions, the statutory characterization prevails. *See Cent. States, Se. & Sw. Areas Pension Fund v. Fulkerson*, 238 F.3d 891, 895 (7th Cir. 2001) ("Statutory terms or words will be construed according to their ordinary, common meaning unless these are defined by the statute or the statutory context requires a different definition.").

Finally, it is important to note that § 851(e) does not speak of the ability to file a case attacking the prior conviction. It

would be extraordinary for a federal statute to forbid a person from going to state court and properly filing an action that the state court is prepared to entertain. At the very least, one would expect a clear statement from Congress that such a profound interference with the state-court system was contemplated. Nothing in § 851(e) comes close to a clear statement permitting the federal courts, in effect, to enjoin someone from filing a motion for relief in state court. *Cf.* 28 U.S.C. § 2283. Our interpretation of the statute respects this important federalism concern.

### 3. Our Precedent Further Supports This Interpretation of § 851(e)

When interpreting a statutory phrase, we also "consult[] any precedents or authorities that inform the analysis." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 7 (2011) (quoting *Dolan v. Postal Serv.*, 546 U.S. 481, 486 (2006)). Here, our precedent reinforces the statute's distinction between challenging the validity of a prior conviction and denying the existence of a prior conviction.

For example, in *United States v. Arango-Montoya*, we held that § 851(e) applies to the former but not the latter. 61 F.3d 1331, 1339 (7th Cir. 1995). The defendant in that case claimed that his prior state conviction was invalid because it was the result of an involuntary guilty plea. *Id.* at 1333. He maintained that even if § 851(e) prevented him from collaterally attacking the prior conviction because it was more than five years old, the sentencing court was still required to follow the procedural requirements in § 851(b) and (c). *Id.* at 1339. We held that the sentencing court's failure to follow those procedures was "harmless" because § 851(e) barred the defendant from challenging the validity of his prior conviction, anyway. *Id.*

However, we held that the sentencing court still had to ask the defendant whether he affirmed or denied the prior conviction as required by § 851(b), "even if § 851(e) bars a collateral attack on the prior conviction." *Id.* We noted that this requirement is necessary because "it is always possible that the government was mistaken and there was no prior conviction, or that the facts alleged in the government's information of prior conviction are incorrect." *Id.* Therefore, under *Arango-Montoya*, an individual may deny the existence of a prior conviction even if the five-year statute of limitations in § 851(e) prevents him from challenging the validity of that conviction.

Similarly, in *United States v. Elder*, 840 F.3d 455 (7th Cir. 2016), we suggested that an individual may challenge the existence of a qualifying conviction without impermissibly challenging the validity of the prior conviction. In that case, the government filed an information under § 851 alleging that the defendant had two prior state convictions that involved felony drug offenses. *Id.* at 458. Both of those prior convictions were more than five years old, and the defendant did not attempt to challenge their validity at sentencing. *Id.* Pursuant to the recidivism provisions of § 841, the sentencing court imposed a mandatory life sentence of imprisonment. *Id.* On appeal, the defendant argued that one of the prior convictions "was not a conviction for a felony drug offense" within the meaning of § 841 "because it was not punishable by more than one year imprisonment." *Id.* at 461. We agreed and accordingly vacated the defendant's mandatory life sentence. *Id.* Even though the prior conviction was more than five years old, we did not address whether § 851(e) barred the defendants claim. Presumably, we did not need to because the defendant was not challenging the validity of the prior conviction.

###### 4. *Two of Our Sister Circuits Have Adopted This Interpretation of § 851(e)*

Our sister circuits have reached similar conclusions. In *McChristian*, the Ninth Circuit held that § 851(e) did not preclude the defendant from claiming that his prior conviction, which was more than five years old, had been stricken by the state court. 47 F.3d at 1503. The Ninth Circuit reached this conclusion for several reasons. First, the court noted that, because the state court struck the prior conviction, "any challenge in federal court to the validity of that conviction would have been moot." *Id.* Second, based on "a careful reading of the statute," the court concluded that "§ 851(e)'s purpose was to exclude from federal court only collateral challenges to convictions and not reports of successful collateral challenges completed in state court." *Id.* In particular, the court relied on how the word "challenge" is used in § 851. *Id.* Finally, the court explained that, because the defendant's prior conviction was stricken before his federal sentencing, any concerns about finality were "inapposite." *Id.* Indeed, the court could "think of no government interest in enhancing a defendant's sentence based on a prior conviction that has already been shown to be obtained in violation of the Constitution." *Id.*

More recently, the Second Circuit also suggested in an unpublished decision that there is a distinction between challenging the fact of a conviction and the validity of a conviction under § 851. In *United States v. Gabriel*, the defendant claimed that the district court procedurally erred by failing to ask whether he affirmed or denied his prior conviction. 599 F. App'x 407, 407 (2d Cir. 2015). The defendant sought, but did not achieve, vacatur of the prior conviction in state court. *Id.* at 408. Because the defendant did not dispute the fact of his

prior conviction, the Second Circuit held that he was not prejudiced by the alleged procedural error. *Id.* The court further noted that the defendant "could not challenge the validity (as opposed to the fact) of his prior felony conviction because it occurred more than five years before the filing of the prior felony information." *Id.* (citing 21 U.S.C. § 851(e)). Although the Second Circuit did not address the precise issue presented here, it intimated that a defendant may dispute the fact of a prior conviction even if § 851(e) barred the defendant from challenging its validity.

Only the Eleventh Circuit, also in an unpublished decision, has reached the opposite conclusion. *See St. Preux v. United States*, 539 F. App'x 946 (11th Cir. 2013) (per curiam). In *St. Preux*, the court held that § 851(e) barred a federal prisoner from reopening his federal sentence after the state court vacated the prior conviction that enhanced his federal sentence. *Id.* at 948. The court stated that "the plain language" of § 851(e) barred the prisoner's claim because the prior conviction occurred more than five years before the government filed its information. *Id.* It distinguished the Ninth Circuit's decision in *McChristian* because, in that case, the prior conviction was vacated prior to the federal sentencing hearing. *Id.* at 949. Although the timing in *McChristian* diminished the finality interests at stake, the Ninth Circuit focused primarily on "a careful reading of the statute," in particular § 851's use of the word "challenge." *McChristian*, 47 F.3d at 1503. The *St. Preux* court did not even attempt to grapple with this statutory interpretation question. Nor did it provide any other reasoning for its conclusion. Accordingly, we do not find it persuasive.

5. *The Government's Negative Implications Argument Is Not Convincing*

Lacking support from the statutory text and case law, the government argues that negative implications from other statutes and the Sentencing Guidelines support its interpretation. Another recidivism statute—the Armed Career Criminal Act of 1984 ("ACCA")[3]—provides that "[a]ny conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter." 18 U.S.C. § 921(a)(20). Similarly, the Sentencing Guidelines expressly preclude consideration of vacated convictions when calculating a defendant's criminal history or determining whether they are a career offender. *See* U.S.S.G. § 4A1.2 cmt. n.6. Because both the ACCA and Sentencing Guidelines explicitly exclude vacated convictions, the government argues that Congress knows how to preclude courts from considering them when it so desires. Accordingly, the government claims that the omission of similar language from § 851 suggests that Congress intended to preclude *all* challenges to prior convictions that are more than five years old, including vacated convictions.

This argument is unavailing. Indeed, the only authority that has endorsed this negative implications argument is the dissenting voice in *McChristian*. *See* 47 F.3d at 1509–10 (Hall, J., dissenting in part). And the majority in that case found that the statutory text compelled the opposite conclusion. *See id.* at

---

[3] The ACCA increases the penalty for possession of a firearm by a felon if the defendant has prior convictions for a violent felony or a serious drug offense. 18 U.S.C. § 924(e).

1503. True, § 851(e) does not use the exact language found in the ACCA. However, this is hardly surprising given that § 851 was enacted in 1970—almost sixteen years before the ACCA was amended to prohibit consideration of vacated convictions. *See* Pub. L. No. 91-513, 84 Stat. 1269 (codified at 21 U.S.C. § 851); Pub. L. No. 99-308, 100 Stat. 449 (codified at 18 U.S.C. § 921(a)(20)). Moreover, although we presume that Congress acts intentionally when it "includes particular language in one section of a statute but omits it another section of the same Act," that is not the case here. *Russello v. United States*, 464 U.S. 16, 23 (1983) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (1972)). Here, the government relies on language used in a *different* federal statute to support its interpretation of § 851(e). Accordingly, its negative implications argument is entitled to less weight. Finally, the government's reliance on language in the Sentencing Guidelines is misplaced because that language is written by the Sentencing Commission—an independent agency within the judicial branch—not Congress. Therefore, the government's attempt to glean congressional intent based on language in the Sentencing Guidelines is unpersuasive.

Ultimately, although § 851(e) does not use the same language as the ACCA or the Sentencing Guidelines, it achieves the same result by distinguishing between challenges to the validity of a prior conviction and claims that a prior conviction does not exist. Under the language of § 851 and our own precedent interpreting that provision, the five-year statute of limitations in § 851(e) applies to the former but not the latter.

### 6. *Section 851 Does Not Preclude Habeas Review*

Next, the government contends that § 851 is the "exclusive means" for challenging prior convictions such that Arreola-

Castillo may not use § 2255 as a vehicle to adjust his federal sentence.

In support of this argument, the government relies on *United States v. Roberson*, 684 F. Supp. 2d 179 (D. Mass. 2010). Like Arreola-Castillo, the defendant in *Roberson* filed a habeas petition under § 2255 seeking to set aside his federal sentence under 21 U.S.C. § 841 after a state court vacated the prior conviction that enhanced his sentence. *Id.* at 180–81. However, the government argued that the defendant could not seek habeas relief on that ground because § 851 provides the exclusive procedure for challenging a prior conviction. *Id.* at 182. The district court acknowledged that several Supreme Court cases "generally support the proposition that an enhanced federal sentence may be adjusted on a § 2255 motion after the enhancing prior conviction has been vacated." *Id.* Nevertheless, the court ultimately concluded that "Congress intended the provisions of § 851 to provide the exclusive basis and procedures for challenging such a prior conviction as it pertains to the enhancements for federal drug crimes authorized under § 841(b)(1)(A) and (B)." *Id.* at 189. This was so, the court explained, because the waiver provision in § 851(c)(2) does not include an exception allowing an individual to later seek federal habeas relief under § 2255. *Id.* at 186. In addition, the court reasoned that § 851(e)'s statute of limitations would "serve[] no purpose" if an individual could later move for resentencing under § 2255. *Id.* at 187. Finally, the court interpreted the "detailed provisions" in § 851(b) as "the equivalent of advice to 'speak now or forever hold your peace.'" *Id.* at 188. The court conceded, however, that its "attempt to understand congressional intent [was] indirect and inferential, and … thus not a certain thing." *Id.*

In addition to being nonbinding on this Court, there is a critical flaw in the *Roberson* court's reasoning: "Implications from statutory text or legislative history are not sufficient to repeal habeas jurisdiction." *I.N.S. v. St. Cyr*, 533 U.S. 289, 299 (2001). Rather, "Congress must articulate specific and unambiguous statutory directives to effect a repeal." *Id.* Accordingly, to the extent the government argues that § 851 precludes Arreola-Castillo from seeking habeas relief, it must point to "a particularly clear statement that such is Congress' intent." *Demore v. Kim*, 538 U.S. 510, 517 (2003). The government cannot do so here because § 851 does not even mention, let alone expressly foreclose, either habeas relief under § 2255 or resort to a state court consistent with that court's rules. *See* 21 U.S.C. § 851.

Moreover, the Supreme Court has consistently held in other statutory contexts that an individual may move to reopen a federal sentence based on the state court's vacatur of a prior conviction that enhanced the sentence. For example, in *Custis v. United States*, the Supreme Court held that, under the ACCA, defendants may not collaterally attack the validity of a prior conviction during a federal sentencing hearing. 511 U.S. 485, 490–94 (1994).[4] Nevertheless, although the ACCA "[did] not permit [the defendant] to use the federal sentencing forum to gain review of his state convictions," the Court noted that he "may attack his sentences in Maryland or through federal habeas review." *Id.* at 497. The Court continued: "If [the defendant] is successful in attacking these state

---

[4] The Court distinguished the ACCA from § 851, which allows an individual to challenge the validity of a prior conviction that is less than five years old. *See Daniels*, 511 U.S. at 491.

sentences, he may then apply for reopening of any federal sentence enhanced by the state sentences." *Id.*

In *Daniels v. United States*, the Court reaffirmed that "[a]fter an enhanced federal sentence has been imposed pursuant to the ACCA, the person sentenced may pursue any channels of direct or collateral review still available to challenge his prior conviction," including state court. 532 U.S. 374, 382 (2001). "If any such challenge to the underlying conviction is successful, the defendant may then apply for reopening of his federal sentence." *Id.*[5]

Finally, in *Johnson v. United States*, the Court said that *Custis* and *Daniels* "assume[d] … that a defendant given a sentence enhanced for a prior conviction is entitled to a reduction if the earlier conviction is vacated." 544 U.S. at 303. The *Johnson* court reiterated that "a defendant who successfully attacked his state conviction in state court or on federal habeas review could then 'apply for reopening of any federal sentence enhanced by the state sentences.'" *Id.* (quoting *Custis*, 511 U.S. at 497). Although these decisions involved the ACCA, the government does not point to anything in § 851 to support a contrary conclusion here.

---

[5] Unlike Arreola-Castillo, who successfully sought vacatur of his prior convictions in state court, the petitioner in *Daniels* "failed to pursue remedies that were otherwise available to him to challenge his [prior] convictions." 523 U.S. at 384. Having failed to do so, the Court held that he could not use § 2255 to attack those convictions. *Id.*

7. *The Statutory Purpose Further Supports this Interpretation*

Finally, we consider the purpose of § 851(e). *See Senne v. Village of Palatine*, 695 F.3d 597, 601 (7th Cir. 2012) ("Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute[] … ." (alterations in original) (quoting *Dolan*, 546 U.S. at 486)).

The purpose of § 851(e) is twofold. First, it prevents administrative difficulties. By keeping collateral challenges to old convictions out of the federal courts after a specified time, § 851(e) mitigates the "expense of keeping court records indefinitely, concerns about evidence being lost over time, and 'thorny procedural difficulties' at sentencing hearings." *McChristian*, 47 F.3d at 1503 (quoting *United States v. Davis*, 36 F.3d 1424, 1438 (9th Cir. 1994)). The *Daniels* Court, interpreting the ACCA, worried whether a district court would "have the documents necessary to evaluate claims arising from long-past proceedings in a different jurisdiction." 532 U.S. at 379. In *Custis*, the Court similarly expressed a concern that, if defendants were allowed to attack a prior conviction during federal sentencing, this "would require sentencing courts to rummage through frequently nonexistent or difficult to obtain state-court transcripts or records that may date from another era, and may come from any one of the 50 states." 511 U.S. at 496. However, the *Custis* Court recognized an exception for claims based on failure to appoint counsel, in part because the basis for such claims "will generally appear from the judgment roll itself, or from an accompanying minute order." *Id.*

Second, § 851(e) protects the finality of state court judgments. States "have a real and continuing interest in the integrity of [their] judgments." *Daniels*, 532 U.S. at 380. "By challenging the previous conviction, the defendant is asking a district court to deprive the state-court judgment of its normal force and effect in a proceeding that has an independent purpose other than to overturn the prior judgment." *Custis*, 511 U.S. at 497 (internal quotation marks and alterations omitted). In the ACCA context, the Supreme Court was concerned that such a collateral attack "would effectively permit challenges far too stale to be brought in their own right, and sanction an end run around statutes of limitations and other procedural barriers that would preclude the movant from attacking the prior conviction directly" in state court. *Daniels*, 532 U.S. at 383.

Neither of those concerns are implicated where, as here, the petitioner directly attacked the prior conviction in state court and the state court vacated the prior conviction. The government complains that the state court case files have been archived or discarded and that, due to the passage of time, victims may be unavailable or unwilling to testify. Critically, though, Arreola-Castillo is not asking the district court to rummage through old case files and hear from witnesses to determine whether his prior convictions were invalid. The New Mexico state court already adjudicated the matter and vacated his prior convictions on that ground. Now, Arreola-Castillo is simply asking the district court to look at the state court's orders to that effect. Like a claim based on failure to appoint counsel, a claim based on vacatur of a prior state conviction will be apparent from the state court's orders. Moreover, there is no concern about protecting the finality of state court judgments because New Mexico already deprived its

*own* judgments of force and effect by vacating them. In doing so, the New Mexico state court clearly determined that Arreola-Castillo's claims did not run afoul of the state's statutes of limitations and procedural barriers.

### III. Conclusion

For the foregoing reasons, we REVERSE the judgment of the district court.